## PAVLOVSKI v. KLASSING et al.

The former husband of one of the defendants brought suit against her
and her present husband, alleging in the original petition, filed Decem-
ber 24, 1907, that in 1889 and 1890 described lots of land were conveyed
to the plaintiff, of which he was in possession up to December 25, 1901,
when defendants took possession of the lands "under some pretended but
fraudulent and unlawful claim,   .   :   and have since over the protest"
of the plaintiff held such possession, and that after plaintiff obtained
title to the lands he conveyed the same to his brothers, who, on December
3, 1907, conveyed the same back to him.    He prayed for a recovery
of the lands, and "especially for any and all such orders, judgments,
and decrees as may be consistent with law and equity in such cases
made and provided."   The plaintiff offered an amendment to the petition,
alleging that, upon the false and fraudulent representations of his
former wife that if he would have his brothers to make her a deed to the
lands she (who was then living separate from him) would immediately
return to him and live with him as his wife "so long as they both might
live," plaintiff had his brothers (who held from him a deed to the land
to secure a debt which had been paid) to make her a deed on July 13.
1895, under which she claimed title to the land.    She returned to the.
plaintiff's home July 24, 1895, but slept in a separate room and refused
to cohabit with the plaintiff, and left him on August 20, 1895, and there-
after married her present husband.    Her promise to live with the plain-
tiff as his wife was falsely and fraudulently made for the purpose of
procuring the deed made to her.    In the amendment the plaintiff prayed
for a cancellation of such deed.    Held:

1. Such amendment was allowable, and was not subject to the objection
   that it added a new and distinct cause of action.
2. The petition as amended sought to set aside the deed to the wife because
   of its having been procured by her fraud, and was not subject to de-
   murrer on the ground "That said petition as amended is an attempt to
   add by parol to the terms of a written instrument, to wit: an attempt

to add to the terms of an unconditional deed, by parol, a condition that it was to be effective only in the event that the defendant lived with plaintiff as his wife."

(a) Though the deed recited a consideration of $1,500, it could be shown by parol that the real consideration was as alleged in the amendment.

3. The time during which the plaintiff was in peaceable possession of the lands should not be counted against him in determining whether or not he was barred by lapse of time from invoking the aid of a court of equity in having the deed to his wife cancelled.

(a) The plaintiff having sought by equitable proceedings to have the deed set aside within seven years from the time he lost possession of the property and she took possession, his right to ask a court of equity to set aside the deed is not barred by his own laches.

(b) Upon proof of the allegations of the petition as amended, that the former wife of the plaintiff procured the deed by fraud as alleged, the plaintiff is entitled to have the deed cancelled. The petition as amended set forth a good cause of action and was not subject to general demurrer.

June 29, 1910.

Equitable petition. Before Judge Wright. Floyd superior court. April 28, 1909.

*F. W. Copeland* and *Hal Wright,* for plaintiff.

*Nathan Harris* and *Dean & Dean,* for defendant.

HOLDEN, J. On December 24, 1907, the plaintiff brought suit against his former wife and her present husband, to recover described tracts of land, making in his original petition substantially the following allegations: The plaintiff acquired title to part of the land in 1889 and to the rest in 1890. He subsequently conveyed it to his brothers, who, on December 3, 1907, conveyed it back to the plaintiff, who is now the owner in fee and entitled to its possession, control, and use. On and prior to December 25, 1901, he was in possession of the land. On or about that date the defendants "took possession of said lands . . under some pretended but fraudulent and unlawful claim, and without any legal right or legal authority whatever, and have since over the protest of this petitioner held the possession of said land against petitioner's right, claim, and title, and are now in the possession of the same under some pretended but unlawful and fraudulent claim, and refuse to deliver to petitioner the possession thereof." The plaintiff prayed for a recovery of the property and mesne profits, and "especially for any and all such orders, judgments, and decrees as may be consistent with law and equity in such cases made and provided." Amendments were offered, making substantially the

45

following allegations: On July 13, 1895, the plaintiff had his brothers to make to the defendant, who was formerly the wife of the plaintiff, a deed to the lands, under which she claims title thereto. This deed recites a consideration of $1500, but the only consideration thereof was the promise of the defendant, who was at that time his wife and living apart from him, that she would "immediately return to and live with petitioner as his wife so long as they might live." This deed was secured by her falsely and fraudulently representing to the plaintiff that if he would have the same made, she would "again and immediately resume her place in plaintiff's family as his wife, and would continue so to live with him so long as they both might live; that plaintiff believed and acted on said statement, promises, and contract, and, acting on the same in good faith for said consideration, was misled, defrauded, and deceived by the said Henrietta, in this: that instead of resuming her place as plaintiff's wife, except for a short while as a pretense in order to obtain said land agreement, she declined and refused to do so, although plaintiff offered and was anxious to accept her back as his wife, and she refused to return, and soon after married to her present husband." She came back to live with the plaintiff on July 24, 1895, and lived with him until August 20, 1895, "and during said time refused to cohabit with plaintiff as his wife, but slept in a separate room from plaintiff, and refused to treat him as her husband; and plaintiff charges that said Henrietta's only purpose was to secure his property," and "to fraudulently secure said deed," and plaintiff was thereby "injured, wronged, cheated, and deceived and defrauded." Plaintiff prayed for a cancellation of the deed, and that the title to the land be declared to be in him as against the defendants in the original petition and his brothers, whom he prayed to be made parties defendant, and who, by an order of the court, were made parties defendant. At the time the brothers of the plaintiff made the deed to his former wife they held title to the land to secure a debt, which had then been paid. The two brothers who were made parties defendant acknowledged service, but filed no defense. The defendant Julius Klassing offered a disclaimer, and the other defendant, who was formerly the wife of the plaintiff, filed a demurrer. To an order sustaining this demurrer the plaintiff excepted.

1.    One of the grounds of the demurrer, which was filed during

the term of the court at which the amendments were offered, was as follows: "That said petition as amended is a separate and distinct cause of action from that originally filed by plaintiff; the petition as originally filed having been a common-law action for the recovery of possession of land, together with mesne profits, and the petition as amended being an equitable proceeding to set aside and cancel a deed for fraud." Under the record in this case, we think it proper to treat both of the amendments as having been allowed by the court without objection. Whether or not the question as to whether the amendments added a new cause of action was properly raised by the demurrer need not be considered, as the amendments offered no new cause of action and were allowable. The plaintiff in his original petition stated that the defendants held the lands "under some pretended but fraudulent and unlawful claim" of title, and prayed for a recovery of the lands, "and especially for any and all such orders, judgments, and decrees as may be consistent with law and equity in such cases made and provided." The allegations in the amendment set forth the deed under which the defendants claimed title to the land, and alleged that it was procured by fraud, and asked a cancellation of the same. This did not add any new cause of action to that originally brought. The object of the original petition was to maintain title to and obtain possession of the lands sued for. By the amendments the same result was sought, the plaintiff seeking, in furtherance of that purpose, to set aside, as having been procured by fraud, the deed which he caused his brothers to make to the main defendant. The gist of the original petition was that the plaintiff was the rightful owner of the lands sued for, and that the defendants were holding them under a pretended but fraudulent and unlawful claim. The amendments specified that the alleged fraudulent claim was based on a deed which the defendant, who was formerly the wife of the plaintiff, had obtained by fraud, and sought a cancellation of this deed in the suit for a recovery of the possession of the land sued for in the original petition. Amendments of this nature did not add a new cause of action, and were permissible. *Jordan* v. *Downs*, 118 *Ga.* 544 (45 S. E. 439) ; *Bridger* v. *Exchange Bank*, 126 *Ga.* 821 (56 S. E. 97, 8 L. R. A. (N. S.) 463, 115 Am. St. R. 118) ; *Brice* v. *Sheffield*, 121 *Ga.* 216 (48 S. E. 925).

2. Two of the grounds of demurrer were as follows: "7. That said petition, as amended, is an attempt to add, by parol, to the terms of a written instrument, to wit: an attempt to add to the terms of an unconditional deed, by parol, a condition that it was to be effective only in the event that defendant lived with the plaintiff as his wife. 8. That said petition as amended should be dismissed upon the ground that such condition can not be engrafted on said deed, it appearing that there was no intention to incorporate such condition in the deed." There is no merit in either of these grounds of the demurrer. The consideration of the deed could be inquired into; and although it recited a consideration of $1500, the plaintiff had a right to show that he had his brothers to make the deed to his wife in consideration of her living with him, and could show that it was procured by fraud on the part of the wife. There was no effort to add any condition to the deed, or to change the terms thereof.

3. One of the grounds of the demurrer was that plaintiff's right to recover the land and cancel the deed was barred because of his own laches. We think that the petition, properly construed, means that from the time the brothers of the plaintiff made his wife a deed on July 13, 1895, up to December 25, 1901, the plaintiff was in possession of the land, and that the possession of the land by his wife and her second husband never began until December 25, 1901. The brothers of the plaintiff made him a deed to the property on December 3, 1907, and this suit was filed on December 24, 1907. We do not think the equitable right of the plaintiff to have the deed cancelled was barred by laches on his part. Twelve years had elapsed between the date of the execution of the deed to the wife of the plaintiff, which it was sought to cancel, and the time the suit was filed, but only about six years intervened between the time the possession of the land by the plaintiff ceased and the time of the filing of the suit. Ought the time during which the plaintiff was in possession of the property to be counted against him, in determining whether or not his right to have the deed cancelled is barred by his delay in undertaking to assert such right? We think not. In 18 Am. & Eng. Enc. Law, 124, it is said: "The owner of the legal title in possession may lie by until his possession is invaded or his title attacked, before taking steps to vindicate his right." On page 125 of this work the following language

is used. "But when the plaintiff is out of possession it would appear that the defense of laches is available. . . Laches will not be imputed to one in peaceable possession of property, for delay in resorting to a court of equity to establish his right to the legal title." See *Pierce* v. *Middle Georgia Land Co.,* 131 *Ga.* 99, 102, 103 (61 S. E. 1114) ; 5 Pomeroy's Eq. Jur. § 33, p. 58. Conceding that the plaintiff, while in possession of the property from the time the deed to his wife was made, or from the time his wife left his home soon thereafter, which possession continued to December 25, 1901, had the right to apply to a court of equity to have the deed cancelled, we do not think his failure to do so can be considered against him, under the facts of this case, in determining whether or not he was barred by lapse of time from asserting his right to have the deed cancelled. He was in possession of the property and enjoying the benefits of it, and his failure to assert such rights before his possession and enjoyment of the benefits of the property were disturbed should not be considered against him in determining whether or not by lapse of time he had lost the right to have the deed from his brothers to his wife cancelled in a suit for that purpose filed after he lost possession. The only time that should be counted against the plaintiff is that between the date when his wife and her second husband took possession of the property on December 25, 1901, and the date when the suit was filed on December 24, 1907, which was six years. There is in this State no statute of limitations barring the right of the owner of land to sue for a recovery of it; though another in adverse possession for seven years or more under color of title may acquire a prescriptive title which would be the superior title. The analogy of the law is followed in courts of equity; and as the plaintiff sought to have the deed made to his wife cancelled within a less time than seven years after he lost possession of the property, we do not think that he was barred by the lapse of time from asserting such rights, there being no special circumstances sufficient to authorize a departure from the general rule above announced. At the time the plaintiff brought this suit he had obtained from his brothers a deed to the land. The allegations of the petition were sufficient to show that the wife of the plaintiff by fraud on her part induced the plaintiff to have his brothers execute a deed to her, and the petition was sufficient to withstand a general demurrer. *Brown*

v. *Doane*, 86 *Ga.* 32 (12 S. E. 179, 11 L. R. A. 381). The court committed error in sustaining the demurrer and dismissing the petition. *Judgment reversed. All the Justices concur.*